# UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF OHIO

|  |  |  |
|---|---|---|
| In Re: | ) | |
| | ) | **JUDGE RICHARD L. SPEER** |
| Steven/Lisa Smith | ) | |
| | ) | Case No. 10-30243 |
| Debtor(s) | ) | |
| | ) | |

## DECISION AND ORDER

This cause comes before the Court on the Motion of the United States Trustee to Dismiss this case pursuant to 11 U.S.C. § 707(b)(1), § 707(b)(2) and § 707(b)(3). (Doc. No. 23). A Hearing was held on the matter, at which the Debtors objected to the Dismissal of their case. (Doc. No. 36). Also heard at the time of this Hearing was the Motion brought by the United States Trustee To Review and Disgorge Attorney Fees. (Doc. No. 31).

At the conclusion of the Hearing held on these matters, the Court deferred ruling so as to afford the opportunity to further consider the evidence and arguments submitted by the Parties. (Doc. No. 22). The Court has now had the opportunity to review all of the arguments and evidence submitted in this case, and finds, for the reasons now explained, that the Motion of the United States Trustee to Dismiss has Merit and that the Debtors' attorney shall be required to Disgorge to the Debtors fees in the amount of $750.00.

## BACKGROUND

On January 19, 2010, the Debtors, Steve and Lisa Smith, filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. (Doc. No. 1). To assist with their bankruptcy, the Debtors retained the legal services of Attorney Robert Brennan Blackwell. For his services, Attorney Blackwell represented that he was paid the sum of $1,299.00.

**In re: Steven and Lisa Smith**
**Case No. 10-30243**

At the time they filed their bankruptcy petition, the Debtors also, as required by the Bankruptcy Rules, filed an Official Form B22A, entitled "Chapter 7 Statement of Current Monthly Income and Means-Test Calculation." This form implements the requirement of § 707(b)(2)(C), requiring a debtor to perform the 'means test' calculation of § 707(b)(2) so as to determine if granting relief in the case should be presumed to be an abuse.

In completing Form B22A, the Debtors, who have one dependent, represented that they had a combined gross annual income of approximately $37,351.44. Because this income figure fell below the median income for a like size household in the state of Ohio,[1] the Debtors determined that no presumption of abuse arose in their case, checking then the applicable box on the Form. (Doc. No. 1). This income figure, however, significantly contrasted with that disclosed by the Debtors in their bankruptcy schedules, wherein the Debtor reported an annualized income of $80,928.12. *Id.*

On April 28, 2010, the United States Trustee (hereinafter the "UST") filed the Motion now before the Court to Dismiss this case. In the Motion, the UST took issue with the Debtors' 'means test' calculation on Form B22A, stating that "it appears that Debtors incorrectly calculated their Means Test and once the Means Test is completed correctly, the presumption of abuse will arise." (Doc. No. 23, at pg. 5). The UST also set forth that this case should be dismissed under § 707(b)(3) because the Debtors have the ability to repay their debts.

---

[1]

At the time the Debtors filed for bankruptcy relief, the median income for a family of three in the state of Ohio was $61,772.00.
http://www.justice.gov/ust/eo/bapcpa/20091101/bci_data/median_income_table.htm.

Pursuant to 11 U.S.C. § 707(b)(7), the 'means test' only applies to debtors who have a current monthly income, as defined in 11 U.S.C. § 101(10A), that exceeds the state-wide median income for a household of the same size.

Page 2

In re: Steven and Lisa Smith
Case No. 10-30243

Shortly thereafter, the Debtors filed an amended Form B22A, stipulating to the position of the UST that the granting of Chapter 7 relief in this case is presumptively abusive for purposes of § 707(b)(2). (Doc. No. 24). In their amended form B22A, the Debtors' set forth that their annualized income, for purposes of performing the 'means test' of § 707(b)(2), was $74,702.88. A hearing on the Motion of the UST to Dismiss was set by the Court for June 3, 2010. (Doc. No. 25).

On June 3, 2010, legal counsel for the UST, as well as the Debtors individually appeared at the Hearing set on Dismissal. Legal counsel for the Debtors, however, did not appear at the Hearing. (Doc. No. 30). Consequently, with the Debtors not having the benefit of legal counsel, the Court rescheduled the Hearing on the UST's Motion to Dismiss. (Doc. No. 33).

Based upon the failure of Attorney Blackwell to appear at the Hearing on Dismissal, the UST thereafter brought a Motion To Review and Disgorge Attorney Fees. The basis for the Motion:

> The debtors both took time off from their employment to attend the hearing. They incurred travel costs. They may have expended other funds. Consequently, the debtors have been directly harmed by their counsel's failure to appear.

(Doc. No. 31, at pg. 2).

At the subsequent Hearing held on the Motion of the UST to Dismiss, Attorney Blackwell appeared and advocated on behalf of the Debtors. At the Hearing, the Debtor, Steve Smith, testified that he would be willing to attempt to formulate a plan of reorganization under Chapter 13 of the Bankruptcy Code. Both of the Debtors also testified that they had stable employment, and that after paying their necessary expenses they had some disposable income available to pay their unsecured debts; these unsecured liabilities total approximately $40,000.00.

Page 3

After the Hearing held on Dismissal, the Debtors filed a second amended Form B22A, claiming in this form that no presumption of abuse arose in their case. (Doc. No. 45 & 46). As the basis for this position, the Debtors again revised their current monthly income, lowering the amount to $71,718.96. In certain categories of expenses allowable under the 'means test,' the Debtors also made upward revisions.

## DISCUSSION

This matter is before the Court on the Motion of the UST to Dismiss. Matters concerning the dismissal of a case, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O). As a core proceeding, this Court has been conferred with the jurisdictional authority to enter a final order in this matter. 28 U.S.C. § 157(b)(1).

The Motion of the UST to Dismiss is brought pursuant to 11 U.S.C. § 707(b). Under the first paragraph of this provision, the general rule is set forth that a case may be dismissed for abuse, with § 707(b)(1) providing, *inter alia*:

> (b)(1) After notice and a hearing, the court . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter.

Section 707(b) then goes on to prescribe two alternative standards by which to assess the existence of abuse. First, in § 707(b)(2) it is provided that, under a "means test" formula, abuse may be presumed in instances where an ability to pay threshold is exceeded. Second, § 707(b)(3) sets forth that, even if no presumption of abuse arises, a court may still dismiss a case based upon the particular circumstances of the case. The UST relies on both § 707(b)(2) and § 707(b)(3) as a basis for dismissal.

Page 4

**In re: Steven and Lisa Smith**
**Case No. 10-30243**

Concerning the application of § 707(b)(2), the Court agrees with the position taken by the UST that the dismissal of this case is appropriate. The Court, in this regard, finds that the Debtors' first amended Form B22A, showing that a presumption of abuse arises, most accurately reflects the correct 'means test' calculation. This is not to say that the Debtors' 'means test' calculation is without deficiencies. For example, in their first amended Form B22A, the Debtors did not take a deduction for a vehicle operation expense, although they appear to be entitled to take such a deduction.

At the same time, it would not appear that any such deficiencies are material, with the Debtors' disposable income under the 'means test' calculation being well in excessive of the abuse thresholds. Specifically, the Debtors' amended Form B22A shows a monthly disposable income of $3,544.56, well above the abuse threshold of $182.50. 11 U.S.C. § 707(b)(2)(A)(i)(II).

In addition, as it concerns the Debtors' second amended Form B22A, some of the figures seem contrived. Of note, the Debtors on line 21 of Form B22A took a deduction of $1,311.91. A deduction on this line, however, is only appropriate if one contends that the process, concerning the allowance under the IRS housing and utilities standards, does not accurately reflect what the debtor should be entitled to use. This requirement was not satisfied, with the Debtors not offering any basis concerning the inadequacy of the process. In any event, where multiple amendments are made to bankruptcy forms, the Court necessarily views with a jaundice eye the changes contained in the later amendments when the changes are favorable to the party making the amendment.

If, as here, a presumption of abuse arises under § 707(b)(2), a debtor may offer evidence to rebut the presumption. Section § 707(b)(2)(B) sets forth the necessary requirements for a debtor to rebut the presumption of abuse which arises based upon the 'means test' calculation. This provision is comprised of both a substantive and procedural component. Under the substantive portion of § 707(b)(2)(B), a debtor, to rebut a presumption of abuse, must demonstrate two elements: (1) the

Page 5

existence of "special circumstances" which justify the allowance of an additional expense or adjustment to income; and (2) the lack of any "reasonable alternative" for making the adjustment.

For this purpose, the "special circumstances" contemplated by § 707(b)(2)(B) will normally involve circumstances beyond the debtor's reasonable control, or result form circumstances highly unusual in character and of the type not normally encountered by most debtors. This is generally consistent with the two examples contained in § 707(b)(2)(B), with this provision providing that "special circumstances" may consist of (1) a serious medical condition, or (2) a call to active duty in the Armed Forces.

In this matter, no evidence exists that a sudden or catastrophic event occurred to the Debtors. Particularly, the evidence is devoid of any serious medication or a sudden and precipitous rise in debt. The Debtors are also still both gainfully employed. To be sure, the Debtors are experiencing some fluctuations with their income and expenses. But such changes are not calamitous, and are not atypical of changes experienced by many debtors who seek bankruptcy relief.

Accordingly, for these reasons, the Court finds that, as applied to § 707(b)(2), the granting of relief in this case is presumptively an abuse and that no "special circumstances" exist to rebut this presumption. Yet, even if this were not the case, dismissal would still be appropriate under § 707(b)(3).

Section 707(b)(3) requires that a Court dismiss a debtor's case for abuse when it is determined that "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(B). Whether a debtor has the ability to repay their unsecured debts has developed to become a prime, and often dispositive consideration when determining whether, under the 'totality of the circumstances' standard of § 707(b)(3)(B), a case should be dismissed for abuse. *In re Brenneman*, 397 B.R. 866, 870-71 (Bankr.N.D.Ohio 2008). In *In re Krohn*, the Sixth Circuit Court of Appeals first cited this consideration with approval, explaining:

Page 6

> Among the factors to be considered in deciding whether a debtor is needy is his
> ability to repay his debts out of future earnings. That factor alone may be
> sufficient to warrant dismissal. For example, a court would not be justified in
> concluding that a debtor is needy and worthy of discharge, where his disposable
> income permits liquidation of his consumer debts with relative ease.

886 F.2d 123, 126 (6th Cir.1989) (internal citation omitted).

A debtor's ability to repay their debts is normally ascertained by reference to the amount of "disposable income" the debtor has available, and whether that income could adequately fund a Chapter 13 plan. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 435 (6th Cir. 2004). For purposes of bankruptcy law, the term "disposable income" is defined, generally, as that income received by a debtor which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. *Id.,citing* 11 U.S.C. § 1325(b)(2). The income and expenses set forth by a debtor in their bankruptcy schedules constitute a natural starting point when making such a determination.

In this case, the Debtors set forth that after mandatory withholdings made from their income, they have a combined net salary of $5,084.42 per month. Against this salary, the Debtors disclosed $3,730.71 in expenses necessary for the support of their household, leaving the Debtors $1,353.71 in available monthly disposable income to repay their creditors. Under any measure, this affords the Debtors the ability to repay their creditors. In this regard, the Debtors have $40,000.00 in unsecured debt. Thus, the Debtors could, under a 60-month Chapter 13 plan, repay 100% of their unsecured debt by allocating $667.00 per month to their plan, an amount which is under half the amount of 'disposable income' claimed by the Debtors.

Thus, even after accounting for possible downward changes to the Debtors' salary, as well as upward pressures on the Debtors' expenses, the Debtors have sufficient leeway in their budget to make an attempt to repay their creditors. This conclusion is reinforced by the fact that both of the Debtors have steady employment, thereby establishing the prerequisite for a Chapter 13 that the Debtors have

Page 7

"regular income." 11 U.S.C. § 109(e). Accordingly, with the Debtors having the ability to repay at least a portion of their obligations, the Court finds that granting relief to the Debtors would be an abuse for purposes of § 707(b)(3)(B).

The last matter before the Court concerns the motion brought by the UST to Review and Disgorge Attorney Fees. In its Motion, the UST requests that Attorney Blackwell be ordered to disgorge the $1,299.00 in fees he received from the Debtors for his legal services on the basis that he "failed to appear at the hearing to consider the United States Trustee's 'Motion To Dismiss' on June 3, 2010." (Doc. No. 31, at pg. 1).

Any attorney representing a debtor in a bankruptcy case is required to file a statement of compensation paid or agreed to be paid. 11 U.S.C. § 329(a); FED.R.BANK.P. 2017. A court, either on a motion of a party in interest or on its own initiative, may then review the fee statement, and if it is determined that the attorney's compensation exceeds the reasonable value of such services, the court is then directed to reduce or deny such compensation and order any excess returned. 11 U.S.C. § 329(b). The requirements of this provision apply regardless of the Chapter of the Code under which the debtor seeks relief and regardless of the source of the compensation, whether from the estate, the debtor, a third party or some combination thereof. *In re Metropolitan Envtl., Inc.*, 293 B.R. 871, 888 (Bankr. N.D.Ohio 2003).

The reasonableness of an attorney's compensation under § 329 is assessed with regards to the particular circumstances of each case. Services charged by a debtor's attorney which are of poor quality and/or which do not comply with an attorney' ethical duties are not reasonable and provide grounds for the disgorgement of fees for purposes of § 329(b). *In re Whitman*, 51 B.R. 502, 506 (Bankr. D. Mass. 1985). The same is true where debtor's counsel does not abide the Bankruptcy Code and Rules and orders of the court. *In re Federal Roofing Co., Inc.*, 205 B.R. 638, 644 (Bankr. N.D. Ala. 1996). On both these counts, the Court finds the disgorgement of attorney fees to be a proper remedy in this case.

Page 8

Attorney Blackwell, despite having received notice, did not appear at the Hearing set on June 3, 2010, concerning the Dismissal of the Debtors' case under § 707(b). This failure of Attorney Blackwell to attend the Hearing, or otherwise make proper arrangements for his clients, does not meet minimal professional standards. In straightforward terms, at the initial hearing held on dismissal, the Debtors' Chapter 7 bankruptcy was to be placed in jeopardy. The Debtors had hired Attorney Blackwell to guide them through this process. However, not only did Attorney Blackwell fail to perform this function by failing to attend the Hearing, but the Debtors incurred additional costs, having to take extra time off work to attend the rescheduled hearing held on dismissal.

Attorney Blackwell's justification, that he had an ill parent, while possibly having relevance on an issue such as "excusable neglect" under Bankruptcy Rule 9024, does not provide cause for allowing him to retain fees for which his services were not adequate. This is particularly true in light of the fact that Attorney Blackwell did not inform the Court prior to the hearing, during the hearing, or subsequent to the hearing that he would be absent. Attorneys are officers of the court, as well as professionals. As such, they are held to a high standard regarding their professional responsibilities. *In re Koliba*, 338 B.R. 48, 50 (Bankr. N.D.Ohio 2006).

At the same, it is recognized that the disgorgement of professional fees should not be imposed lightly. *In re LTV Steel Co., Inc.*, 288 B.R. 775, 779 (Bankr. N.D.Ohio 2002). As such, since Attorney Blackwell did confer upon the Debtors benefits, the Court will not require the entire disgorgement of his fees. Instead, the Court, given the particular circumstances presented, finds that Attorney Blackwell shall be required to disgorge $750.00 of the $1,299.00 in fees he received. Such fees shall, pursuant to § 329(b)(2), be returned to the Debtors.

In conclusion, the Court finds that the Motion brought by the UST to Dismiss under 11 U.S.C. § 707(b)(1), § 707(b)(2) and § 707(b)(3) has merit. Similarly, the Court finds that, pursuant to the Motion of the UST To Review and Disgorge Attorney Fees, Attorney Blackwell shall be required to

Page 9

partially disgorge those fees he charged the Debtors for his legal services. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

*ORDERED* that, subject to the Debtors' election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1), § 707(b)(2) and § 707(b)(3), be, and is hereby, GRANTED.

*IT IS FURTHER ORDERED* that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on Tuesday, August 31, 2010, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

*IT IS FURTHER ORDERED* that Attorney Robert Brennan Blackwell, attorney for the Debtors, is hereby required to timely disgorge to the Debtors the sum of $750.00. Evidence of this Disgorgement shall be provided to the United States Trustee.

Dated: August 18, 2010

Richard L. Speer
United States
Bankruptcy Judge

Page 10

# CERTIFICATE OF SERVICE

Copies were mailed this 18th day of August 2010 to:

Patti Baumgartner-Novak
3015 Navarre Ave.
#203
Oregon, OH 43616

Lisa K. Smith
4359 E. Co. Rd. 50
Tiffin, OH 44883

Robert Brennan Blackwell
2855 W. Elm St.
Lima, OH 45805

Steven L. Smith
4359 E. Co. Rd. 50
Tiffin, OH 44883

Lenore Kleinman
201 Superior Avenue, East Suite 441
Cleveland, Oh 44114-1240

/s/Jennifer S Huff
Deputy Clerk, U.S. Bankruptcy Court
